UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-235(7) (JNE/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) PLEA AGREEMENT AND |
| v. | ) SENTENCING STIPULATIONS |
| | ) |
| ALBERT DONELL PAYNE, | ) |
| | ) |
| Defendant. | ) |

The United States of America and the defendant, ALBERT DONELL PAYNE, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count 1 of the indictment, which charges him with conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. The United States agrees to move to dismiss the remaining counts of the indictment as to this defendant at the time of sentencing. The government also agrees to not file an information under Title 21, United States Code, Section 851(a), concerning the defendant's prior felony drug convictions which, if filed, would likely enhance the defendant's sentence in this case.

2. **Factual Basis.** The defendant agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

SCANNED
OCT 29 2015
U.S. DISTRICT COURT MPLS

a. From in or about the Autumn of 2012, and continuing through on or about August 21, 2015, in the State and District of Minnesota and elsewhere, the defendant conspired with others to distribute 100 grams or more of heroin.

b. The defendant and his co-defendants were members of a drug trafficking organization informally known as the "Chicago Crew," named after co-defendant Wesley Cortez Oatman, also known as "Chicago," who was the drug organization's founder and manager. The defendant and his co-defendants distributed heroin and other controlled substances for the purpose of generating illicit income.

c. The defendant and his co-defendants obtained heroin from drug suppliers in the Chicago area which was transported to the State and District of Minnesota for further distribution. Upon arrival in the Twin Cities Metropolitan area, the heroin was repackaged and distributed to numerous customers who were, for the most part, young heroin addicts.

d. The defendant and his co-defendants used various telephones to conduct their operations. One method involved the use of a "duty phone," in which a member of the conspiracy would hold a telephone, on a rotating basis, to receive calls from customers. The distributor would then arrange to meet with customers to distribute heroin to them. Another method involved the use of a "dispatch number," in which a member of the conspiracy would take orders over the telephone and then send other members of the conspiracy to conduct heroin transactions. The defendant and his co-defendants would regularly change telephone numbers to disguise and conceal their operations from law enforcement scrutiny.

e. The defendant and his co-defendants would typically direct customers to "hover" in certain neighborhoods in North Minneapolis, Columbia Heights and Saint Paul. Customers would then call the duty phone or dispatch number to arrange for the purchase of heroin. The defendant and his co-defendants would then direct customers to a specific location to meet with the distributor. Sometimes customers would arrive at a specific location and then be directed to another location. In this manner, the defendant and his co-defendants hoped to thwart detection by law enforcement authorities. Once a customer was "in position," a member of the conspiracy would meet briefly with the customer to distribute the heroin, typically through a car window.

f. The defendant and his co-defendants used the money obtained from their drug trafficking activities to pay for additional heroin and to pay members of the conspiracy for services rendered.

g. Certain co-defendants would title rental vehicles, personal vehicles, residences and hotel rooms in other persons' names to conceal their assets and identities from law enforcement scrutiny.

h. The defendant stipulates and agrees that he conspired with his co-defendants and others to distribute over 100 grams of heroin, that he distributed heroin in furtherance of the conspiracy, that he acted voluntarily, and that he knew his actions violated the law.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees the defendant has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States contained herein, the

3

defendant knowingly, willingly and voluntarily gives up the right to file pretrial motions in this case.

4. **Statutory Penalties**. The parties agree Count 1 of the Indictment carries the following statutory penalties:

    a. a mandatory minimum of five years' imprisonment;

    b. a maximum of 40 years' imprisonment;

    c. a supervised release term of at least four years and up to life;

    d. a fine of up to $5,000,000;

    e. a mandatory special assessment of $100.00;

    f. assessment to the defendant of the costs of prosecution;

    g. denial of federal benefits under 21 U.S.C. § 862(a)(1); and

    h. payment of mandatory restitution in an amount to be determined by the Court.

5. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6. **Guideline Calculations**. The parties acknowledge the defendant will be sentenced in accordance with 18 U.S.C. §§ 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge the Court will consider the United

States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

   a. <u>Base Offense Level</u>.  The parties agree that the base offense level for this violation is 24 (at least 100 but less than 400 grams of heroin).  USSG § 2D1.1(c)(8).

   b. <u>Specific Offense Characteristics</u>.  The parties agree that no specific offense characteristics apply in this case.

   c. <u>Acceptance of Responsibility and Other Chapter Three Adjustments</u>.  The parties agree that if the defendant (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release, including not using illegal substances; (3) testifies truthfully during the change of plea and sentencing hearings; (4) complies with this agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the government agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and to move for an additional one-level reduction under § 3E1.1(b).  Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.  The parties agree that no other Chapter Three adjustments apply in this case.

   d. <u>Criminal History Category</u>.  Based on the information currently available to the parties, the defendant appears to have a criminal history category of III.  The defendant's actual criminal history will be determined by the Court based on the information presented in the presentence investigation and by the parties at the time of sentencing.  If the defendant's criminal history category is greater than III, the defendant agrees it will not provide the defendant with a basis to withdraw the defendant's plea of guilty.

   e. <u>Guideline Range</u>.  If the defendant's total offense level is 21 (base offense level of 24, decreased by three for acceptance of responsibility), and his criminal history category is III, the guideline range would be 46 to 57 months' imprisonment, restricted to 60 months because of the applicable five-year mandatory minimum.

f. <u>Fine Range</u>. If the total offense level is 21, the fine range will be $7,500 to $5,000,000. USSG § 5E1.2.

g. <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of at least four years but not more than five years. USSG § 5D1.2.

h. <u>Sentencing Recommendation and Departures</u>. The parties reserve the right to make departure motions and to oppose any such motions made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable guideline range.

7. **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

8. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100. USSG § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

9. **Forfeitures**. The defendant agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), all of the defendant's right, title and interest in the property described in the Forfeiture Allegation of the Indictment.

10. **Waiver of Freedom of Information Act and Privacy Act**. The defendant waives all rights to obtain, directly or through others, information about the investigation

6

CASE 0:15-cr-00235-JNE-TNL   Doc. 117   Filed 10/15/15   Page 7 of 7

and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

11. **Waiver of Appeal**. The parties are expressly aware that Title 18, United States Code, Section 3742, affords them the right to appeal the sentence imposed in this case. Acknowledging this right, the parties hereby waive all rights conferred by Title 18, United States Code, Section 3742, to appeal the sentence on any ground except the defendant may appeal the sentence if the term of imprisonment imposed is greater than 60 months, and the government may appeal the sentence if the term of imprisonment is less than 60 months.

12. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Dated: 10/15/2015

ANDREW M. LUGER
United States Attorney

BY: THOMAS M. HOLLENHORST
Assistant United States Attorney
Attorney ID No. 46322

Dated: 10/15/15

ALBERT DONELL PAYNE
Defendant

Dated: 10/15/15

Patrick W. Flanagan, Esq.
Attorney for Defendant