UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.  15-CR235(7)) (JNE/TNL)

United States of America,

                Plaintiff,      **DEFENDANT'S POSITION PAPER AND MEMORANDUM**

v.

Albert Donell Payne

                Defendant.

Procedural History

Argument

### A.  Continued Objections to Pre-sentence investigation report

1. Page F.2 – SSN#:

Mr. Payne continues to object to the social security number listed in the PSR.  His correct social security number is ▇▇▇▇▇▇▇.

2. Page F.2. – Education:

Mr. Payne objects to the statement that he does not have a High School Diploma, or GED.  Mr. Payne obtained his GED while he was incarcerated at the Jacksonville Correctional Facility in Illinois.  Mr. Payne was released early from prison, on July 28, 1997, on a program that allowed for early release for "school good time" after he completed his GED.  Mr. Payne maintains that the Correctional Facility should have these documents.  Counsel attempted to obtain these records by writing to both the Jacksonville Correctional Center and the Regional Office of Education.  The Regional Office of Education houses all GED records for the Jacksonville Correctional Center.

Counsel received a letter dated March 1, 2016 stating that Mr. Payne may have been in an early release contract, however no GED records were located for Mr. Payne.

3.  Paragraph 53:

Mr. Payne objects to the language in this paragraph beyond the first sentence. The language is not relevant and appears to be included only for inflammatory purposes. As the paragraph notes, "the investigation into these deaths could not be attributed to the DTO.  As such, this base offense level is not applicable." This language is not relevant and is inappropriate for the PSR.  The PSR not only has en effect upon sentencing, but also has implications at the Bureau of Prisons.  A PSR is a non-binding document that is prepared to assist the Court in sentencing.  The preponderance of the evidence standard is the appropriate standard for proving all sentencing facts.  <u>United States v. Villareal-Amarillas</u>, 562 F.3d 892, 897-98 (8th Cir. 2009).  "The burden of proof [at sentencing] is on the government with respect to the base offense level and any enhancing factors." <u>United States v. Hammer</u>, 3 F.3d 266, 272 (8th Cir. 1993); <u>See also</u>, <u>United States v. Howard</u>, 894 F.2d 1085, 1090 (9th Cir. 1990).  "In determining what weight to give the advisory guidelines, it may be helpful for the court to consider whether any guideline enhancements are supported by evidence beyond a reasonable doubt.  This is not a back-door means of adopting the position of the remedial dissenters in *Booker*.  Rather, it allows the court to give effect to both the merits and remedial majority opinions: federal sentencing is still judge-based, but courts should not impose sentences based on the sort of flimsy evidence that often passed under the old regime."  <u>U.S. v. Gray</u>, 362 F. Supp. 2d 714, 723 (S.D. W. Va. 2005).

Mr. Payne objects to this language and requests that it be removed from his PSR.

4. Paragraph 54.

Mr. Payne objects to the assertion that on February 14, 2013, cocaine was found at a place where he was present is relevant conduct and related to the same course of conduct. Mr. Payne acknowledges his role in the distribution of heroin, but does not have any knowledge to conduct related to cocaine.

5. Paragraph 56.

Mr. Payne objects to this paragraph. This paragraph is not relevant and appears to only be for inflammatory purposes. As the paragraph states, "Investigative materials do not suggest the residence was used for the primary purposes of distributing a controlled substance.."

The preponderance of the evidence standard is the appropriate standard for proving all sentencing facts. United States v. Villareal-Amarillas, 562 F.3d 892, 897-98 (8th Cir. 2009). "The burden of proof [at sentencing] is on the government with respect to the base offense level and any enhancing factors." United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993); See also, United States v. Howard, 894 F.2d 1085, 1090 (9th Cir. 1990). "In determining what weight to give the advisory guidelines, it may be helpful for the court to consider whether any guideline enhancements are supported by evidence beyond a reasonable doubt. This is not a back-door means of adopting the position of the remedial dissenters in Booker. Rather, it allows the court to give effect to both the merits and remedial majority opinions: federal sentencing is still judge-based, but courts should not impose sentences based on the sort of flimsy evidence that often passed under the old regime." U.S. v. Gray, 362 F. Supp. 2d 714, 723 (S.D. W. Va. 2005).

Mr. Payne objects to this wording in his PSR and requests that it be removed.

6.       Paragraph 76.  Criminal conviction resulting in 3 points.

      Mr. Payne objects to the calculation of 3 points for the offense stated in this paragraph.  Mr. Payne relies upon U.S.S.G. §§ 4A1.1(a) and the application note; and 4A1.2(e) for his objection.  Sentence was imposed for this offense on February 27, 1998 and he was discharged from Parole on June 1, 1999.  Mr. Payne's current offenses stated in the indictment were for the following dates:  Count 5) October 6, 2014; Count 6) January 4, 2015; Count 14) June 16, 2015; Count 17) July 28, 2015; and Count 18) July 28, 2015.  These dates are beyond the 15 year imposition of sentence on the stated offense.  Mr. Payne believes the points should be removed from his criminal history calculation.

7.       Paragraph 77.  Criminal conviction resulting in 1 point.

      Mr. Payne objects to the 1 point assigned for the offense listed in paragraph 77.  Sentence was imposed on October 2, 2003 and he was discharged on April 2, 2004.  As stated in the paragraph above, Mr. Payne's acts did not occur until October 6, 2014.  10 years had passed and pursuant to U.S.S.G.  §4A1.2(e), a point should not be assessed.

8.       Paragraph 78.  Criminal conviction resulting in 1 point.

      Mr. Payne objects to the 1 point assigned for the offense listed in paragraph 78.  Sentence was imposed and satisfied on the same day, August 25, 2003.  Pursuant to U.S.S.G. §4A1.2(e), this act took place more than ten years prior to the Mr. Payne's acts for which he was indicted.

9.       Paragraph 82.  Criminal History Score.

      Mr. Payne objects to the subtotal criminal history score of 7.  As argued above, Mr. Payne believes 4 points should be deducted from the total of 7 [3 points from

paragraph 76; 1 point from paragraph 77; and 1 point from paragraph 78]. This would result in paragraph 81 being counted for 1 point and not included in the 4 point maximum under USSG §4A1.1(c)], but then another misdemeanor case which was not counted due to the maximum amount already counted, would now be able to be counted. As a result, the total deduction would be 4 and not 5. Mr. Payne believes his criminal history subtotal should be 3 (7-4).

10.     Paragraph 84. Total Criminal History score.

Mr. Payne objects to the total criminal history score of 9. As argued above, Mr. Payne believes his total criminal history score should be 5, resulting in a criminal history category of III and not IV.

11.     Paragraph 90. Facts of case.

Mr. Payne objects to the allegation that the substance involved was heroin. Mr. Payne insists the substance was marijuana.

12.     Paragraph 98.

Mr. Payne objects to the allegation that he belonged to a gang called the Commando boys as a child. He never belonged to a gang and simply hung around with other kids from the neighborhood at the after-school community center.

15.     Paragraph 105.

Mr. Payne objects to the assertion that he choked Ms. Nakita Jackson. Mr. Payne did not choke Ms. Jackson.

16.     Paragraph 111.

Mr. Payne objects to the statement that he does not have a High School Diploma, or GED. Mr. Payne obtained his GED while he was incarcerated at the Jacksonville

Correctional Facility in Illinois.  Mr. Payne was released early from prison, on July 28, 1997, on a program that allowed for early release for "school good time" after he completed his GED.  Mr. Payne maintains that the Correctional Facility should have these documents and is attempting to obtain those.

17.     Paragraph 117.

Mr. Payne objects to the recommendation that he may have the ability to pay a fine.  Mr. Payne is unemployed, has little to nothing for a work history, is currently incarcerated and as stated in paragraph 116, does not have any assets.

### B.  18 U.S.C. §3553(a) Factors for variance

The Supreme Court's decision in <u>United State v. Booker</u>, 543 U.S. 220 (2005) excised the mandatory-guideline provisions of the 1984 Sentencing Reform Act and rendered those guidelines as merely advisory.  When sentencing, the court must now consider 18 U.S.C. §3553(a).  In so doing, the court "shall impose a sentence that is sufficient, but not greater than necessary," to achieve Congress's specific sentencing purposes, including: reflecting the seriousness of the offense, to promote respect for the law, promote just punishment for the offense, and to provide the defendant with needed educational training in the most effective manner. "  18 U.S.C. §3553(a).  A "variance" is any factor under §3553 that may warrant a non-guideline sentence.  <u>Izarry v. United States</u>, 553 U.S. 708 (2008).

Mr. Payne grew up in a part of Chicago known for its violence.  An area where a child learns to survive rather than having a playful childhood.  Not having a father involved in his life, Albert Payne and his siblings relied upon their mother 's support and care to have a safe and stable childhood.  Early on, Albert Payne did well in school,

excelled at sporting activities and stayed out of trouble.  After school, he would immediately go to an after street program called "Off the Street Club."   While here, he would play with his friends and stay away from the neighborhood trouble and negative influences.

      That all changed when he turned 11 years old.  The glue of his family, his mother, passed away.  Albert was now to be raised by his brother, 17 years his senior.  Albert's brother Terry did the best he could, but could not be there as much as Albert's mother was.  Terry had a career and his own family to raise as well.  Terry could not keep as close an eye on Albert as was needed to stave off the negative influences.  Eventually, the neighborhood that has consumed so many children's lives, now consumed another.

      The neighborhood and the negative influences grabbed ahold of Albert shortly after his mother passed.  Troubles began at school and he found himself having more an more contact with the criminal justice system.  He was an 11 year old boy who was being led and supervised by others with more nefarious intentions.  This became the life he knew, the only life he knew how to succeed in.  Eventually, he found himself in Minnesota, arrested and brought before this Court.

      While there is plenty of negative things to view on paper regarding Mr. Payne, there is also good, even if it is not seen on paper.  There is also some irony.  While coming to Minnesota brought about an arrest and assuredly a prison sentence, it also brought about a relief and a new positive outlook on what could be.  Gone was the constant violence in the neighborhood.  There was talk about employment opportunities and he learned that the community did not immediately shut him out from opportunities.

Mr. Payne met Starsha Chandler in Minnesota. They recently had a child together. Mr. Payne, getting older and seeing that he could live in an area without violence and with opportunity began to think about his future. He began to think about furthering his education so he could find work. He began to think and talk about making Minnesota his home and escaping from Chicago. Mr. Payne sees his current arrest as the chance to make that break. He hopes for a sentence that is reasonable and not longer than necessary to help him achieve his future goals of employment and raising his child in a safe community. To this end, Mr. Payne requests a sentence of not more than 60 months as contemplated by the plea agreement and also that he be able serve his time at a facility in Minnesota that offers a drug treatment program for both marijuana and alcohol, and that also provides mental health services as he believes he may suffer from undiagnosed depression resulting from the death of his mother and other loved ones.

## Conclusion

Mr. Payne respectfully requests a sentence not to exceed 60 months and that he be able to serve his sentence at a facility in Minnesota that has a drug treatment program and offers the chance for a mental health examination and treatment if necessary.

Patrick W. Flanagan, Atty ID. #238132
5669 147th Street North
P.O. Box 167
Hugo, MN 55038